UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL A. BROWN and RICHARD J. MILLER,

                Plaintiffs,

   -against-

NEW YORK STATE TROOPER E.E. REISER and
NEW YORK STATE TROOPER T.A. CHARKO,

                Defendants.
------------------------------------------------------------X

**VERIFIED COMPLAINT**

DEMANDS TRIAL BY JURY

      Plaintiffs, by their attorneys, Bloom & Bloom, P.C. and Alex Smith, Esq., complaining of the Defendants, allege as follows:

### THE PARTIES

1. Plaintiff Michael A. Brown ("Brown") is an individual residing in Wappingers Falls, Dutchess County, New York.

2. Plaintiff Richard J. Miller ("Miller") is an individual residing in Fishkill, Dutchess County, New York.

3. Defendant E.E. Reiser ("Reiser") was and continues to be an individual employed as a State Trooper by the New York State Police at Troop K in Salt Point, New York, and acted in such capacity during the occurrences hereinafter set forth.

4. Defendant T.A. Charko ("Charko") was and continues to be an individual employed as a State Trooper by the New York State Police at Troop K in Salt Point, New York, and acted in such capacity during the occurrences hereinafter set forth.

## NATURE OF ACTION AND JURISDICTION

5. This is a civil action pursuant to 42 U.S.C. §1983 seeking damages against the Defendants for committing acts under color of law which deprived the Plaintiffs of rights secured under the Constitution and laws of the United States and particularly under the provisions of the First, Fourth and Fourteenth Amendments.

5. Each and all of the acts of the Defendants Reiser and Charko were done by them in their individual capacities under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and under their authority as New York State Troopers.   Reiser and Charko are sued in their individual capacities.

6. Jurisdiction is conferred on this Court by 28 USC §§1331 and 1343.

7. This Court's supplemental jurisdiction is also invoked to assert Plaintiffs' New York State constitutional and common law claims.

8. This action is properly filed in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. §1391, inasmuch as Plaintiffs' residences are in Dutchess County, New York, Defendants' places of business are in Dutchess County, New York, and because the causes of action on which this action is based arose in the Southern District of New York.

## STATEMENT OF CLAIMS

9. On Wednesday, September 11, 2019, at about 12:00 - 12:30 p.m., Plaintiff Brown was traveling in his fiancée's vehicle, a pick-up truck, north on the Taconic

Parkway, heading toward Interstate 84 West. Plaintiff Miller was sitting in the front passenger seat.

10. Brown's vehicle was in the right lane on the Taconic, and cars were passing him in the left lane.

11. Brown noticed a State Trooper police SUV, behind them traveling in the passing lane; the lights were not on and the SUV did not appear to be pulling anyone over.

12. When the Trooper SUV caught up to Brown's vehicle, the trooper who was driving (Defendant Charko) maintained speed with Brown's vehicle, thus staying alongside on the Parkway.

13. Brown saw the Trooper vehicle through his peripheral vision, and observed the Trooper who was sitting in the passenger seat (Defendant Reiser) glaring at him.

14. The glaring continued for 15 to 20 seconds until Brown looked directly over and made eye contact with Reiser.

15. At this point the Troopers sped up driving forward.

16. When Brown approached the exit to turn westbound onto I-84, he turned on the appropriate signal and observed the Troopers parked in the median.

17. The Troopers quickly pulled out of the median as Brown drove onto the exit ramp, and the SUV's overhead lights were activated.

18. Brown pulled his vehicle to the side of the road on I-84, near the on-ramp onto I-84 West from the Taconic Parkway.

19. The Troopers got out of their vehicle and approached Brown's vehicle.

20. Reiser said to Brown that he was being pulled over because his blinker was not working.

21. Brown told Trooper Reiser that his blinkers were working and he turned them on to demonstrate that they were operable.

21. Reiser then asked Brown for his license and registration.

22. Reiser took these documents, and without checking them walked over to the passenger side of the pick-up truck, and instructed Miller to get out of the vehicle.

23. Miller started to get out of the vehicle, but due to the height of the pick-up truck, Miller used the handle of the truck to help step down from the front passenger seat.

24. Before Miller actually exited the vehicle and before he had stepped down to the ground, Reiser started frisking his person, particularly his groin area, and also started searching his pockets.

25. At this point, Brown asked Reiser what he was doing and stated that he had not even run his license or registration yet; Reiser snapped back to Brown "what is your problem, do we have a problem?"

26. While Reiser was frisking Miller, he was asking Miller, in substance, what his relationship was with Brown, how long have you known him, and how long have you been friends.

27. Reiser then said to Miller and Brown, if you just tell us where the drugs are, we won't have to go through this.

28. Brown stated, I don't have drugs, and told Reiser where he had been and that he was heading to Fishkill; at this point, Reiser was still searching Miller.

29. Reiser then went back to the SUV, ostensibly to run Brown's license and registration.

30. Reiser then walked back to Brown, but before he returned the documents, he told Brown, "tell us where the drugs are, we deal with this all the time and usually let you go the first time."

31. Reiser then stated that he noticed the truck was registered to Beverly Constable. Reiser asked Brown who she was, and Brown responded that she was his fiancée.

32. Reiser then questions her relation to Brown and how long have they been together. Brown responds, in substance, 20+ years, what does this have to do anything? Reiser replied that it is just "weird" or "odd".

33. Brown then asks Reiser if he wanted him to call her, and Reiser says "well could you?" Brown asks if he is serious, and Reiser shouts at him again "what is your problem, do we have a problem".

34. Reiser then told Brown, in substance, that if you won't tell me where the drugs are, then get out of the car.

35. Brown began to exit the vehicle, and Reiser started to search Brown.

36. Brown asks him, "what are you doing", and Reiser directed him to go stand by the side of the guardrail.

37. The temperature was approximately 90 degrees Fahrenheit at that time.

38. Reiser then told Miller and Brown that if they told him where the drugs were, "we can get you out of the sun."

39. Both Miller and Brown told Reiser, in substance, that Miller cannot stand in the sun, that he has health conditions and cannot be exposed to direct sunlight for a long period of time.

40. In response, Reiser says to them, in substance, that this was their own doing, that they could get out of the sun if they just told him where the drugs are.

41. Brown again stated that he has no drugs. Miller then also stated they had no drugs.

42. Reiser responds, in substance, that I am going to get the dog and search your vehicle and I will find it (the drugs).

43. As Reiser walks to the SUV to get the dog, Brown and Miller were standing with Charko, who was noticeably younger than Reiser.

44. Brown asked Charko how long he had been on the force, and Charko replied 8 months.

45. With Reiser still near the SUV, Charko was using hand gestures, which Miller and Brown interpreted as telling them to "shush", "just let him do his thing", "don't provoke"; these gestures were not accompanied by anything verbal.

46. Charko was quietly shaking his head, appeared to be intimidated by Reiser, seemed not to like what was going on and did not take part in it.

47. Reiser then had the dog search Brown's vehicle for about 5 minutes, and then returned the dog to the SUV.

48. Brown and Miller again tell the Troopers that Miller cannot remain in the direct sun and that he is going to get ill.

49. Reiser responds by saying, in substance, just tell me where the drugs are, the dog didn't find anything, just tell me where the drugs are.

50. Brown says the dog just searched the car and there are no drugs.

51. Reiser responds by saying he is going to get the dog again.

52. As Reiser walked back towards the SUV to get the dog, Miller said quietly, I have to start recording, but Reiser heard him; Miller was referring to his cell phone.

53. Reiser shouted at Miller to get up from the guardrail and go back to the pick-up truck.

54. Reiser then forcibly grabbed the cell phone from Miller, without consent, slammed it on the hood of the pick-up truck and it then fell into the pavement. The cell phone was cracked as a result.

55. Miller picked it up and said to Reiser, you cracked my screen; Reiser replied "oops".

56. Reiser told Miller to put his hands on the hood, but since the pick-up truck was still running and sitting in direct sunlight, Miller told Reiser that it is too hot to touch.

57. Reiser told Miller to let his hands hover above the hood, and Reiser frisked and searched him again.

58. Brown then said to Charko, "you know this is wrong", and Charko just shakes his head. Reiser again asks Brown where the drugs are, and Brown tells him again that there are no drugs.

59. Reiser then tells Brown to go over to the pick-up truck and put his hands on the hood.

60. Brown puts his hands on the hood, thus burning his hands.

61. Reiser then "karate chops" Brown's thighs to his groin.

62. Brown's hands continued to burn and he was in pain.

63. Reiser told Brown that if they just tell him "where the drugs were, we wouldn't have to go through this, I go through all the time, usually let the guys go on the first time, you are keepings yourselves out here."

64. Reiser then directed Brown to go sit on the guardrail with Miller.

65. Brown and Miller now are sitting on the guardrail on the side of road in the sun, and they are profusely sweating.

66. Reiser goes to get the dog again, and Reiser searches the car again with the dog for 10 to 15 minutes, but finds nothing.

67. Reiser comes over to the guardrail and says, in substance, tell me where the drugs are again and you can leave. Brown replies again that he has no drugs.

68. Miller is very red; Brown tells Reiser again that Miller needs to get out of the sun because he has health issues and is going to get sick.

69. Reiser tells Brown, "we get this all the time".

70. Reiser then tells them, "we are going to let you guys go", and "I am just doing my job."

71. Brown tells Reiser, in substance, this is wrong, what you did is wrong.

72. Reiser shouts again "what is your problem do you have a problem".

73. Miller and Brown return to their vehicle.

74. Charko comes to the passenger side window, and asks that Miller sign a paper saying that "we did everything right".

75. Miller refuses to sign the proffered paper.

76. Approximately, one and a half hours elapsed from the time the Troopers pulled the pick-up truck over to the time that Plaintiffs were allowed to leave.

77. No traffic tickets or summonses were issued to either Plaintiff.

78. Approximately 3 minutes after they left, Miller started throwing up. Brown was afraid to pull over because the Troopers were behind them. Miller was throwing up on the floor of the vehicle.

79. Following September 11, 2019, Miller vomited over four consecutive days and lost 12 to 15 pounds over 2 weeks because of nausea. Miller also experienced daily headaches thereafter for one month measured from September 11, 2019, and four headaches per week in the successive month.

80. The acts, conduct and behavior of Defendants were performed knowingly, intentionally and with deliberate indifference to Plaintiffs' constitutional rights.

81. All of the foregoing occurred without any fault or provocation on the part of Plaintiffs who were wholly innocent and who were not engaged in any unlawful or wrongful conduct.

82. By virtue of the Defendants' conduct as described herein, Plaintiffs suffered shame, humiliation, indignity, mental anguish, emotional distress and other psychological injuries, as well as physical injuries.

83. By reason of the foregoing, Plaintiffs are entitled to an award of compensatory damages against the Defendants.

84. By reason of the foregoing, and because Defendants acted in bad faith and with a wanton, grossly reckless and unconscionable disregard of Plaintiffs' rights, privileges, welfare and well-being, were motivated by a racial animus, and were guilty of egregious misconduct toward them, Plaintiffs are entitled to an award of punitive damages against Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION

85. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

86. The aforesaid actions of the Defendants are wholly without legal justification and are sufficiently arbitrary and conscience-shocking as to violate Plaintiffs' rights under the Due Process Clauses of the United States and New York State Constitutions.

## AS AND FOR A SECOND CAUSE OF ACTION

87. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

88. The conduct of Defendants as set forth above violated Plaintiffs' Federal Fourth and Fourteenth Amendment and State Article I, Section 12 rights not to be detained by the use of excessive force.

## AS AND FOR A THIRD CAUSE OF ACTION

89. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

90. The conduct of Defendants as set forth above violated Plaintiffs' Federal Fourth and Fourteenth Amendment and State Article I, Section 12 rights not to be unreasonably detained for an excessive period of time. The unnecessary and overlong detention of Plaintiffs ripened into an arrest without probable cause.

## AS AND FOR A FOURTH CAUSE OF ACTION

91. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

92. The conduct of Defendants as set forth above violated Plaintiff Brown's Federal Fourth and Fourteenth Amendment and State Article I, Section 12 rights not to be subject to a warrantless, non-consensual unreasonable search of his vehicle.

## AS AND FOR A FIFTH CAUSE OF ACTION

93. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

94. The conduct of Defendants as set forth above violated Plaintiffs' Federal Fourth and Fourteenth Amendment and State Article I, Section 12 rights not to be subject to warrantless, non-consensual unreasonable searches of their persons.

## AS AND FOR A SIXTH CAUSE OF ACTION

95. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

96. The conduct of Defendants as set forth above violated Plaintiffs' Federal First and Fourteenth Amendment and State Article I, Section 8 rights not to be subject to retaliation for the exercise of protected speech.

## AS AND FOR A SEVENTH CAUSE OF ACTION

97. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

98. The conduct of Defendants as set forth above violated Plaintiffs' Federal Fourteenth Amendment and State Article I, Section 11 rights to be guaranteed the equal protection of the laws.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

99. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

100. The conduct of Defendants as set forth above violated Plaintiff Miller's rights not to be deprived of property without due process of law as guaranteed by the Due Process Clauses of the United States and New York Constitutions.

### AS AND FOR A NINTH CAUSE OF ACTION

101. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

102. The conduct of Defendants as set forth above constituted deliberate indifference to Plaintiff Miller's apparent and serious medical needs in violation of his rights to due process of law as guaranteed by the Due Process Clauses of the United States and New York Constitutions.

### AS AND FOR A TENTH CAUSE OF ACTION

103. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "84" as though fully set forth herein.

104. In addition to the constitutional violations set forth above, Defendants' conduct constituted the torts of false imprisonment, assault, battery, larceny, conversion, robbery, intentional infliction of emotional distress, and the failure to intervene to halt and cease the commission of the afore-mentioned torts under the common law of the State of New York.

WHEREFORE, Plaintiffs demand judgment against the Defendants:

1. Adjudging and Declaring:

    A. Violations of Plaintiffs' rights to due process of law guaranteed by the

Fourteenth Amendment to the United States Constitution and Article I, Section 6 of the New York State Constitution;

  B. Violations of Plaintiffs' rights to be free from the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the New York State Constitution;

  C. Violations of Plaintiffs' rights to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the New York State Constitution;

  D. Violations of Plaintiffs' rights to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 11 of the New York State Constitution;

  E. Violations of Plaintiffs' rights to freedom of speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the New York State Constitution;

  F. Defendants' conduct constituted the torts of false imprisonment, assault, battery, larceny, conversion, robbery, intentional infliction of emotional distress, and the failure to intervene to halt and cease the commission of the afore-mentioned torts under the common law of the State of New York.

2. Awarding Plaintiffs compensatory and punitive damages for the violations of their constitutional and common law rights in amounts to be determined by the Court; and

3. Awarding Plaintiffs the reasonable costs and expenses of this action and

attorneys fees; and

4. Granting Plaintiffs such other and further relief as may be just.

Dated: December 16, 2019
Middletown, New York

*/s/ Alex Smith*

ALEX SMITH, ESQ. (AS 5052)
6 North Street
Middletown, New York 10940
(845) 344-4322

BLOOM & BLOOM, P.C.
KEVIN BLOOM, ESQ. (KB 5347)
530 Blooming Grove Turnpike
New Windsor, New York 12553
(845) 561-6920

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL A. BROWN and RICHARD J. MILLER,

                Plaintiffs,

      -against-

NEW YORK STATE TROOPER E.E. REISER and
NEW YORK STATE TROOPER T.A. CHARKO,

                Defendants.
-----------------------------------------------------------X

**VERIFICATION**

State of New York
                ss:
County of Orange

      RICHARD J. MILLER, being duly sworn, deposes and says:

      That he is one of the Plaintiffs herein; that he has read the foregoing Verified Complaint and knows the content thereof; and that the same is true to his own knowledge, except as to those matters alleged on information and belief, and as to those matters he believes them to be true.

                                      RICHARD J. MILLER

Sworn to before me this
_13_ day of December, 2019

_____
NOTARY PUBLIC

KEVIN DANIEL BLOOM
NOTARY PUBLIC-STATE OF NY
Residing in Orange County
#02BL6060266
Commission Expires _September 9_, 20 _22_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL A. BROWN and RICHARD J. MILLER,

          Plaintiffs,

                                                **VERIFICATION**

  -against-

NEW YORK STATE TROOPER E.E. REISER and
NEW YORK STATE TROOPER T.A. CHARKO,

          Defendants.
-----------------------------------------------------------X

State of New York
                    ss:
County of Orange

       MICHAEL A. BROWN, being duly sworn, deposes and says:

       That he is one of the Plaintiffs herein; that he has read the foregoing Verified Complaint and knows the content thereof; and that the same is true to his own knowledge, except as to those matters alleged on information and belief, and as to those matters he believes them to be true.

                                                      */s/ Michael A. Brown*
                                                      MICHAEL A. BROWN

Sworn to before me this
13 day of December, 2019

_____
NOTARY PUBLIC

                                                        KEVIN DANIEL BLOOM
                                                    NOTARY PUBLIC-STATE OF NY
                                                    Residing in Orange County
                                                    #02BL6060766
                                                    Commission Expires September 9, 2022