# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL A. BROWN and JOAN SERRECHIA O/B/O the late RICHARD J. MILLER,

*Plaintiff,*

v

NEW YORK STATE TROOPER E. E. REISER and NEW YORK STATE TROOPER T. A. CHARKO,

*Defendants.*

**19 Civ. 11588 (PMH)(PED)**

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RULE 50a MOTION

---

ALEX SMITH (AS 5052)
6 North Street
Middletown, New York 10940
(845) 344-4322

KEVIN BLOOM, ESQ.
Bloom & Bloom, P.C.
530 Blooming Grove Turnpike
New Windsor, New York 12553
(845) 561-6920

Attorneys for Plaintiffs

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

ARGUMENT..............................................................................................................1

    Point 1
    The *Terry* Frisks of Plaintiffs Were Not Justified as a Matter of Law..............1

    Point 2
    Reiser's Searches of the Vehicle and the Persons Was in Violation of the
    Plaintiffs' Constitutional Rights....................................................................5

    Point 3
    Subsequent To the Violations Described in Points 1 and 2, Reiser's Use of
    Force in the Searches of Both Plaintiffs Constituted the New York Torts of
    Assault and Battery As a Matter of Law.........................................................9

## PRELIMINARY STATEMENT

Plaintiffs seek judgment as a matter of law pursuant to FRCP 50a against Troopers Reiser and Charko on two claims. The first is that Reiser's frisks of both Plaintiffs were without justification, and therefore in violation of their constitutional rights. The second is that subsequent to the frisks and after Reiser determined that Brown's license and the vehicle registration was valid, the Troopers were obligated to let the Plaintiffs go on their way – instead, Reiser began searching the vehicle and their persons.

Plaintiffs also seek judgment as a matter of law against Reiser because he had no right to use any force against either Plaintiff as a result of the two constitutional violations described above.

It is well settled that:

> Rule 50 of the Federal Rules of Civil Procedure generally "governs motions for judgment as a matter of law in jury trials. It allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.' " *Weisgram v. Marley Co.*, 528 U.S. 440, 445. . .[citing]. . . (2000) (quoting 9A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2521, at 240)

*Katt v City of New York*, 151 F.Supp.2d 313, 328 (SDNY 2001), *aff'd in part sub nom.*

*Krohn v New York City Police Dep't*, 60 F. App'x 357 (2nd Cir. 2003), and *aff'd sub nom.*

*Krohn*, 372 F.3d 83 (2nd Cir. 2004)

The facts are contained in the accompanying Declaration of Alex Smith.

## ARGUMENT

### Point 1
### The *Terry* Frisks of Plaintiffs Were Not Justified as a Matter of Law

Trooper Reiser's sole justification for the *Terry* frisks of the late Richard Miller

1

and Michael Brown was the alleged "suspicious behavior" of Miller during the stop when he "observed the passenger, Mr. Miller, reach out the passenger window and towards the exterior windshield." (Smith Dec, ¶ 4). Reiser testified that it was his right hand, and that he did not see any object drop from his hand, even though he searched the roadway for such an object. (Smith Dec, ¶ 4).

> It is well settled that:
>
> The Fourth Amendment "guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " *United States v. Gomez*, 877 F.3d 76, 85–86 (2d Cir. 2017)...[citing]... Under *Terry v. Ohio*, 392 U.S. 1...[citing]... (1968), "police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot, and may frisk him if they reasonably believe he is armed and dangerous." *United States v. Elmore*, 482 F.3d 172, 178 (2d Cir. 2007). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson*, 508 U.S. 366, 373...[citing]... (1993) (quoting *Adams v. Williams*, 407 U.S. 143, 146...[citing]... (1972)).

*Brown v City of Utica*, 2020 WL 1046022, *5 (NDNY 2020)

The Second Circuit has made clear that during an investigative stop of an automobile, police officers can frisk an occupant "for weapons" if they "have an objectively reasonable and articulable belief that the [occupant] is armed and dangerous" "at the inception of the officer's search." *United States v Weaver*, 975 F.3d 94, 100 (2nd Cir. 2020), *vacated on other grounds on reh'g en banc,* 9 F.4th 129 (2nd Cir. 2021). The Second Circuit explained:

> As *Terry* itself recognized, a frisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment." 392 U.S. at 17...[citing]... *see also United States v. Tinnie*, 629 F.3d 749, 756 (7th Cir. 2011) (Hamilton, J., dissenting) ("[W]e must recognize that a frisk is most certainly not a minor intrusion on privacy."). "[I]t is simply fantastic to urge that

2

> [a frisk] performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' " *Terry*, 392 U.S. at 17-18...[citing]... We cannot forget the *Terry* Court's admonition that a frisk "is not to be undertaken lightly." 392 U.S. at 17...

*Weaver*, 975 F.3d at 102.

At bar, Miller's alleged hand movement *outside of the car* does not justify a reasonable suspicion that he is armed or dangerous. *Contrast, People v Peart*, 283 AD2d 14, 18 (1st Dept. 2001) ("When there is a lawful stop of a vehicle, courts have recognized *furtive motions toward the floor* to be a reasonable basis for an officer to believe that a weapon may be involved").

On point is *People v Chism*, 194 AD2d 351, 355-356 (1st Dept. 1993), where the Court reasoned:

> Similarly, a quick hand motion by the occupant of a vehicle is, absent other circumstances suggestive of criminal conduct, not in itself suspicious (*People v. McCready*, 121 A.D.2d 897...[citing]... As the Court of Appeals stated in *People v. Russ*, 61 N.Y.2d 693...[citing]... "[a] frisk requires reliable knowledge of facts providing reasonable basis for suspecting that the individual to be subjected to that intrusion is armed and may be dangerous" (at 695...[citing]...; see also *People v. Carney*, 58 N.Y.2d 51...[citing]...; *People v. Benjamin*, 51 N.Y.2d 267...
>
> Since defendant's purported "abrupt movement" was not enough, standing alone, to permit an inference that he was armed and dangerous, Officer Gahr was not justified in touching him in any manner. Indeed, under the circumstances herein, the police conduct was inappropriately intrusive to the extent that it exceeded their right to make a simple inquiry, including the officers' demand that any of occupants exit the vehicle (see *People v. Howard*, 147 A.D.2d 177...[citing]...

*See also, People v Mestey*, 61 AD2d 447, 450 (1st Dept. 1978) ("A quick hand motion by an occupant of a vehicle, absent other circumstances suggesting criminal activity, is not suspicious in itself."), *citing, People v Martinez*, 37 NY2d 662, 664 (1975)

An interesting analysis is contained in *United States v Johnson*, 365 F.Supp.3d 89,

3

94 (D.D.C. 2019), where the police observed a suspect "leaning slightly to his left and holding his left forearm at roughly a ninety degree-angle, with his left elbow tucked closely to his side." The court reasoned:

> The positioning of Johnson's arm is admittedly a more challenging subject. It was certainly awkward-looking, and with the benefit of hindsight, one can see how it may have had the effect of concealing Johnson's inside pocket. But though "a police officer is not required to possess the clarity of vision that arises only in hindsight," *United States v. Pontoo*, 666 F.3d 20, 28 (1st Cir. 2011), hindsight also does not validate actions that were unreasonable when they were taken. The question is whether, based on the information available at the time, an objectively reasonable officer would have found Johnson's arm positioning indicative of concealment. And, again, it is the government's burden to make that showing. . .
>
> Here, the Court is presented with little to no evidence that a reasonable officer would have, based on training and expertise, viewed this position as suggestive of someone concealing a weapon. Instead, all indications are that a reasonable officer would have thought Johnson was injured. . .
>
> That Johnson's arm position had an apparent, wholly innocent explanation distinguishes this case from others where reasonable suspicion was present based on possible concealment. Johnson did not, for example, respond to the sight of the officers by needlessly "pressing the front of his body" against a vehicle. *United States v. Dortch*, 868 F.3d 674, 680 (8th Cir. 2017). He did not have his hand "awkwardly inserted halfway in his ... pocket, 'cupped' as if 'grasping an object.' " *United States v. Black*, 525 F.3d 359, 365 (4th Cir. 2008). Nor was he wearing bulky or heavy clothing that was "conspicuously inappropriate for the weather." *Dortch*, 868 F.3d at 680. And it certainly was not as if Johnson's pants were unbuttoned, which the D.C. Circuit has observed "naturally creates a reasonable fear that [a] suspect might be in the process of trying to conceal a weapon there." *United States v. Bullock*, 510 F.3d 342, 348 (D.C. Cir. 2007).
>
> . . .Thus, although the positioning of Johnson's arm certainly has some relevance, it was not sufficient, under the totality of these circumstances, to create reasonable suspicion to believe that Johnson was armed and dangerous. The officers therefore were not justified in searching Johnson under *Terry*. The search was a violation of the Fourth Amendment.

*Johnson*, 365 F.Supp.3d at 103–104. Trooper Reiser's justification for these frisks at bar does not survive this analysis, and Plaintiffs are entitled to judgment as a matter of law on

4

their Sixth Cause of Action.

## Point 2
### Reiser's Searches of the Vehicle and the Persons Was in Violation of the Plaintiffs' Constitutional Rights

Subsequent to the *Terry* frisks, Reiser determined that Brown possessed a valid driver's license and vehicle registration. His constitutional obligation at that point in time was to allow the Plaintiffs to proceed on their way. Instead, Reiser conducted searches of the vehicle and the persons of Plaintiffs.

This case is controlled by *People v Banks,* 85 NY2d 558 (1995) and its progeny. In *Banks,* a trooper stopped a vehicle for a seat belt violation. The trial court approved a subsequent search of the vehicle because the driver's and passenger's "inconsistencies in [their] responses to questions on the origin, length and destination of their trip and [the driver's] nervousness during questioning raised a reasonable suspicion of criminality on their part, justifying continued detention." *Banks,* 85 NY2d at 561.

The Court of Appeals first explained the applicable law:

> A traffic stop constitutes a limited seizure of the person of each occupant (*People v. May,* 81 N.Y.2d 725, 727...[citing]...; *People v. Harrison,* 57 N.Y.2d 470, 476...[citing]... For a traffic stop to pass constitutional muster, the officer's action in stopping the vehicle must be justified at its inception and the seizure must be reasonably related in scope, including its length, to the circumstances which justified the detention in the first instance (*United States v. Sharpe,* 470 U.S. 675, 682...[citing]...; *see also, Florida v. Royer,* 460 U.S. 491, 500...)

*Banks,* 85 NY2d at 562. The Court then held that "[w]hile the stop was justified..., the length and circumstances of the detention were not." *Banks,* 85 NY2d at 262. The Court reasoned that once the trooper found the driver's license to be valid and the "stolen vehicle radio check came back negative and he prepared the traffic tickets for the seat

5

belt violations, the initial justification for seizing and detaining [the occupants] was exhausted". *Banks*, 85 NY2d at 262, *citing People v Milaski*, 62 NY2d 147, 156 (1984). The Court explained:

> The Trooper nevertheless retained their licenses, effectively forcing them to remain at the scene while he awaited the appearance of the backup Trooper he had requested. This continued involuntary detention of defendant and Jones and their vehicle constituted a seizure in violation of their constitutional rights, unless circumstances coming to Cuprill's attention following the initial stop furnished him with reasonable suspicion that they were engaged in criminal activity (*People v. Milaski*, 62 N.Y.2d at 156. . .[citing]. . .; *see also, People v. May*, 81 N.Y.2d 725, 727. . .[citing]. . . Contrary to the holdings of the courts below, defendant's nervousness and the innocuous discrepancies in his and Jones' answers to the Trooper's questions regarding the origin, destination and timing of their trip did not alone, as a matter of law, provide a basis for reasonable suspicion of criminality (*People v. Milaski*, 62 N.Y.2d at 156. . .

*Banks*, 85 NY2d at 562.

The courts have continued to rely on this reasoning. *See, e.g., People v Dealmeida*, 124 AD3d 1405, 1407 (4th Dept. 2015) ("Defendant's nervousness and discrepancies in describing where he was coming from and going are not enough to give rise to a reasonable suspicion that criminal activity is afoot"); *People v Goethe*, 63 Misc.3d 1222(A) (Bronx Cty. 2019) ("Clearly, a defendant's nervousness, without more, is not enough to give rise to a founded suspicion of criminality that allows for a common-law inquiry.")

The reasoning in *People v Barreras*, 253 AD2d 369, 373 (1st Dept. 1998) is instructive:

> Once defendant's papers were all found to be in order, the officers, without more, were obligated to issue the stop-sign summons and allow defendant to resume his journey; *i.e.*, "the initial justification for seizing and detaining defendant ... was exhausted" (*Banks, supra*, at 562. . .[citing]. . ., *People v. Milaski*, 62 N.Y.2d 147,

6

156...[citing]... Unlike *People v. Battaglia* (86 N.Y.2d 755...[citing]... where the driver of the vehicle provided what police rationally concluded was a false identification, or *People v. Tejeda*, 217 A.D.2d 932...[citing]..., where the defendant was stopped as the result of a radio call that he had stolen gasoline from a gas station and his responses were illogical and suspicious, nothing in defendant's conduct or demeanor here provided a further basis to detain him.

The arresting officer testified about defendant's extreme nervousness being unusual. However, any citizen alone late at night, might appear nervous under those circumstances. In any event, "nervousness", even coupled with "innocuous discrepancies" in response to questions, does not justify continued detention (*Banks, supra,* at 562...[citing]... Nor did defendant's failure to look directly at the inquiring officer provide a basis for further suspicion—the People's witness conceded that all of the officers had flashlights and at least two of them were shining them in or about the car.

Trooper Reiser claims he had "reached Level 2 founded suspicion of criminal activity" based simply on Miller's arm movement, Brown's "combative and aggressive demeanor towards us, and the discrepancy in the information initially provided to me during the interview." (Smith Dec, ¶ 6). But his claim fails as a matter of law.

Repeatedly citing *People v DuBour,* 40 NY2d 210 (1976), the three levels were explained in *People v Reese*, 61 Misc.3d 1208(A) (NYC Crim. Ct. 2018),

> At the first level, law enforcement may engage in the minimal intrusion of approaching a person to request information "when there is some objective credible reason for that interference not necessarily indicative of criminality" (*Id.* at 223). The second level, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary "to gain explanatory information, but short of a forcible seizure" (*Id.*). The third level, "a forcible stop and detention," requires that the "officer entertain[ ] a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor," and "[a] corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that [they are] in danger of physical injury by virtue of the detainee being armed" (*Id.* [citation omitted] ). "Finally[,] a police officer may

7

arrest and take into custody a person when [the officer] has probable cause to believe that person has committed a crime, or offense in [the officer's] presence" (*Id.* [citation omitted] ).

The Fourth Department held that "nervousness, fidgeting, and illogical or contradictory responses to level one inquiries do not permit an officer to escalate an encounter to a level two *De Bour* confrontation". *People v Gates*, 152 AD3d 1222, 1223 (4th Dept. 2017), *aff'd,* 31 NY3d 1028 (2018), *citing, People v Garcia,* 20 NY3d 317, 320-322 (2012); *Dealmeida,* 124 AD3d at 1407.

The reasoning in *People v White*, 159 AD3d 741, 745 (2nd Dept. 2018) is also instructive:

> Here, the circumstances described by Officer Weibert at the suppression hearing did not establish "a founded suspicion that criminality [was] afoot" (*People v. De Bour,* 40 N.Y.2d at 223. . .[citing]. . . Significantly, there was no testimony of a bulge at the defendant's waistband (*see People v. Harris,* 122 A.D.3d 942, 944. . .[citing]. . .; *People v. Stevenson,* 7 A.D.3d 820. . .[citing]. . .; *People v. Johnson,* 178 A.D.2d 549. . .[citing]. . .; *People v. Bush,* 171 A.D.2d 801. . .[citing]. . .), or any indication that the defendant was reaching for, grabbing at, or adjusting his waistband (*see People v. Correa,* 77 A.D.3d 555. . .[citing]. . . *People v. Stevenson,* 7 A.D.3d 820. . .[citing]. . .; *People v. Flores,* 226 A.D.2d 181. . .[citing]. . . *People v. Moore,* 176 A.D.2d 297, 298. . .[citing]. . .). To the contrary, Officer Weibert denied that the defendant made any furtive gesture or reached for anything; he testified only that the defendant was acting nervous, shaking his knees and legs up and down, and leaning forward in his seat with his hands in his lap and his arms tightly at his side.

Plaintiffs thus contend that the foregoing demonstrates that all of the detention and searches subsequent to the completion of what was justified by the traffic stop violated Plaintiffs' federal and state constitutional rights as a matter of law. Plaintiffs are thus entitled to judgment as a matter of law on their Third, Fourth and Fifth Causes of Action.

In making these arguments, Plaintiffs are relying *solely* on Reiser's testimony, and

8

thus these violations are established as a matter of law without factual dispute.

### Point 3
### Subsequent To the Violations Described in Points 1 and 2, Reiser's Use of Force in the Searches of Both Plaintiffs Constituted the New York Torts of Assault and Battery As a Matter of Law

The unconstitutional detention and frisk described in Points 1 and 2, *supra,* also result in Reiser committing the New York torts of assault and battery as a matter of law. That is because he subjected both Plaintiffs to an intentional, unreasonable and unconsented use of force when he physically searched them.

This argument will also solely rely on Reiser's testimony to eliminate any issue of factual dispute. Thus, Plaintiffs' claims of excessive force will not be covered by this argument.

A Western District court recently described the caselaw that establishes Reiser's liability at bar:

> New York defines civil assault as "an intentional placing of another person in fear of imminent harmful or offensive contact" and civil battery as "an intentional wrongful physical contact with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006). "To establish a civil battery a plaintiff need only prove intentional physical contact by defendant without plaintiff's consent; the injury may be unintended, accidental, or unforeseen." *Hughes v. Farrey*, 30 A.D.3d 244, 247. . .[citing]. . . (1st Dep't 2006). To prove a civil battery claim against a police officer, a plaintiff must show that the officer made "bodily contact, that the contact was offensive, and that [the officer] intended to make the contact." *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005). A plaintiff must also prove that the officer's conduct was not reasonable within the meaning of New York Penal Law § 35.30(1), the statute which governs use of force by law enforcement in the course of their duties. *See id.*

*Belsito v County of Erie*, 2021 WL 3053386, *6 (WDNY 2021)

It is well settled in New York that " 'any use of force' by a police officer outside

9

the context of a lawful arrest — regardless of the amount of force — is a technical assault or battery." *Goonewardena v Spinelli*, 2020 WL 1557745, *9 (EDNY 2002)[1], *quoting Sulkowska v City of New York*, 129 F.Supp.2d 274, 294 (SDNY 2001); *citing, Johnson Suffolk County Police Dept.*, 245 AD2d 340 (2nd Dept. 1997). "Put differently, if the arrest or issuance of summons is deemed to have been unlawful, any physical contact during the course of the arrest may be deemed at least a technical assault or battery." *Goonewardena*, 2020 WL 1557745, *9, *citing, Ferguson v City of New York*, 2018 WL 3626427, *2 (EDNY 2018) ("Any intentional physical contact by Officer Sanchez without plaintiff's consent was at least a technical assault or battery under New York law because it occurred outside a lawful seizure."); *Pawloski v State*, 45 Misc.2d 933 (Ct. Claims 1965) (finding assault and battery arising out of false arrest where plaintiff "was touched by the State Police").[2] Put another way, "[i]f an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery." *Goonewardena*, 2020 WL 1557745, *10, *citing See Rucks v City of New York*, 96 F.Supp.3d 138, 153 (SDNY 2015); *see, Johnson,* 245 AD2d at 241 ("As the arrest of the plaintiff by the defendant police officer Stephen E. Brussell was unlawful, Brussell committed a battery when he touched the plaintiff during that arrest")

" 'Intent' is defined in this context to mean 'intent to cause a bodily contact that a

---

[1] *Report and recommendation adopted in part*, 2020 WL 1550724 (EDNY 2020)

[2] Under New York law, "assault is an intentional placing of another person in fear of imminent harmful or offensive contact" and a "battery is an intentional wrongful physical contact with another person without consent." *Green v City of New York*, 465 F.3d 65, 86 (2nd Cir. 2006), *citing, Charkhy v Altman*, 252 AD2d 413 (1st Dept. 1998)

10

reasonable person would find offensive;' not that the perpetrator intended to cause harm." *Melendez v City of New York*, 62 Misc.3d 1206(A) (Kings Cty. 2019), *quoting Maines v Cronomer Valley Fire Dept., Inc.*, 50 NY2d 535, 546 (1980); *citing, Masters v Becker*, 22 AD2d 118, 120 (2nd Dept. 1964). " 'If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest,' including handcuffing a plaintiff and placing him in a police vehicle." *Bate v City of New York*, 2018 WL 4757940, *25 (SDNY 2018), *quoting Sulkowska*, 129 F.Supp.2d at 294.

This caselaw also differentiates New York State battery claims from federal excessive force claims. "While New York law regarding assault and battery generally parallels federal law regarding excessive force, under New York law, assault and battery claims can be said to be more plaintiff friendly than claims brought under § 1983 for excessive force, because under New York law, if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery." *Randolph v Metropolitan Transportation Authority*, 2018 WL 2943744, *6 (SDNY 2018), *citing, Posr v Doherty*, 944 F.2d 91, 94-95 (2nd Cir. 1991). "In short, the objective reasonableness standard applied to § 1983 claims, does not apply to claims brought under New York law for assault and battery if there has been an unlawful arrest, regardless of whether any force would be deemed reasonable if applied during a lawful arrest." *Randolph*, 2018 WL 2943744, *6, *citing, Jones v Parmley*, 465 F.3d 46, 62 (2nd Cir. 2006)

The *Belsito* Court adopted this reasoning and held that "[u]nder New York law, if

11

an arrest is determined to be unlawful, any use of force by an officer constitutes an assault or battery." *Belsito,* 2021 WL 3053386, *7, *citing, inter alia, Loftin v City of New* York, 2017 WL 3614437 (EDNY 2017) ("If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery").

Thus, Reiser's searches and all uses of force against Plaintiffs constituted the torts of assault and battery as a matter of law, and Plaintiffs are entitled to judgment on their Tenth Cause of Action.

Dated:  Middletown, New York
        February 13, 2023

Respectfully submitted by:

_____
ALEX SMITH (AS 5052)
6 North Street
Middletown, New York 10940
(845) 344-4322

KEVIN BLOOM, ESQ.
Bloom & Bloom, P.C.
530 Blooming Grove Turnpike
New Windsor, New York 12553
(845) 561-6920